IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**GET LOUD ARKANSAS, et al.,**                                                               **PLAINTIFF**

**v.**                           **CASE NO. 5:24-CV-05121-TLB**

**JOHN THURSTON, et al.,**                                                       **DEFENDANTS**

**RESPONSE IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

Defendants John Thurston; Sharon Brooks; Jamie Clemmer; Bilenda Harris-Ritter; William Luther; James Harmon Smith, III; and Johnathan Williams, in their official capacities as Commissioners of the State Board of Election Commissioners (collectively, "Defendants" or the "SBEC"), by and through their attorneys, Mitchell, Williams, Selig, Gates & Woodyard, PLLC, respectfully submit this response in opposition to Plaintiffs' Motion for Preliminary Injunction (the "Motion").

**I.     INTRODUCTION**

In April 2024, the SBEC, consistent with its Constitutional charge, adopted a rule requiring that voter registration applications forms in Arkansas be (1) "complete and legible"; (2) "executed with a Signature or Mark made by the voter registration applicant"; and (3) submitted to the permanent registrar by mail, delivered in-person by the voter, or . . . delivered by a Third-Party Registration Organization." SBEC passed the rule after learning of discrepancies and inconsistencies in how individual county clerks were handling the voter registration process in each of Arkansas's seventy-five counties.

More than a month after the rule took effect, Plaintiffs filed this action, in which they allege the rule's "Signature or Mark" requirement runs afoul of the Materiality Provision of the Civil

Rights Act of 1964. Another month then passed before Plaintiffs moved for extraordinary relief in the form of a preliminary injunction. The Motion presents a straightforward set of questions for the court. Two are most important for present purposes.

*First*, do Plaintiffs have standing? The answer is no, at least for the organizational Plaintiffs.

*Second*, and more importantly, have Plaintiffs carried their burden of showing that the "Signature or Mark" requirement is not "Material" and thus violates 52 U.S.C. § 10101(a)(2)(B)? They have not, as "an original signature advances voter integrity" and "makes such a signature a material requirement." *Vote.Org v. Callanen*, 89 F.4th 459, 489 (5th Cir. 2023).

For these reasons, and others, the Court should deny the Motion.

## II. STATEMENT OF FACTS

Amendment 51 to the Arkansas Constitution was adopted in 1964 "to establish a system of permanent personal registration" in our State. Ark. Const. amend. 51, § 1. The Amendment was designed for the express purpose of ensuring that all persons who vote in Arkansas elections are "legally qualified" to do so. Ark. Const. amend. 51, §§ 1, 3. Amendment 51 permits the use of a "computer process" only for voter registration applications submitted by specifically enumerated "registration agencies." Ark. Const. amend. 51, § 5(b)(2)–(4). These agencies include the Office of Driver Services, State Revenue Offices, public assistance agencies, and disabilities agencies. Ark. Const. amend. *Id.* Outside of these avenues of voter registration, however, Amendment 51 does not allow for the use of any "computer process." To submit a voter registration application by mail, for example, the application must include a "signature or mark

made under penalty of perjury that the applicant meets each requirement for voter registration." Ark. Const. amend. 51, § 6(a)(3)(F).

The phrase "signature or mark" was left undefined in the Constitution. Amendment 51 fills this void through the SBEC, which is constitutionally charged with the responsibility to "prescribe, adopt, publish and distribute" the "Rules and Regulations supplementary to this amendment and consistent with this amendment and other laws of Arkansas as are necessary to secure uniform and efficient procedures in the administration of this amendment throughout the State." Ark. Const. amend. 51, § 5(e)(1). In addition, the SBEC has a constitutional obligation to "prescribe, adopt, publish and distribute" the "detailed specifications of the registration record files, the voter registration application forms and other registration forms, including voter registration list maintenance forms, all of which shall be consistent with [Amendment 51] and uniform throughout the State." Ark. Const. amend. 51, § 5(e)(1).

The SBEC is a seven-member board comprised of the Secretary of State (who chairs the SBEC), two members appointed by the Governor, and one member each appointed by the chair of the state Democratic party, the chair of the state Republican party, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives. In recent months, the SBEC "became aware of discrepancies and differences in how county clerks were accepting voter registration applications." Ex. 1, Letter from Richard Chris Madison to John Thurston, July 15, 2024 (the "SBEC Memorandum"), at 3. In some counties, the elected county "clerk was accepting electronically signed voter registration applications whereas other county clerks were not accepting electronically signed applications." *Id.* The SBEC concluded, "This created an unfair

and non-uniform application process for applicants" that "was dependent on the county [in] which the applicant resided." *Id.* at 3–4.

On April 23, 2024, in an effort to provide greater security in the election process, create uniformity in the administration of voter registration processes, and help prevent fraudulent voting practices, the SBEC, pursuant to its constitutional charge, adopted an emergency rule on the issue. The rule provides, "A permanent registrar shall accept a Registration Application Form that is: (a) complete and legible; (b) is executed with a Signature or Mark made by the voter registration applicant; and (c) is submitted to the permanent registrar by mail, delivered in-person by the voter, or is delivered by a Third-Party Registration Organization."  SBEC, Rule Regarding Voter Registration, May 4, 2024, § 1401(1).  "Signature or Mark" is defined as

> a handwritten wet signature or handwritten wet mark made on a Registration Application Form with a pen or other writing device that is physically moved across the form and that forms the applicant's signature or mark on the paper form.  A Signature or Mark that utilizes a computer to generate or recreate the applicant's signature or mark is not an acceptable signature or mark of the applicant for purposes of Amendment 51 §§ 6(a)(1) & (a)(3)(F) Registration Application Form.

*Id.*, § 1400(7).

The SBEC memorialized the rationales underpinning the rule in a declaratory order.  In this order, the SBEC first noted its constitutional and statutory obligation "to enforce election and voter registration laws. Ark. Code Ann. § 7-4-120(a)." Ex. 2, SBEC, Declaratory Order 2024-002, Apr. 23, 2024, at 1.  The SBEC went on to explain that Amendment 51 does not permit the acceptance of electronic signatures on voter registration applications unless processed by the Registration Agencies enumerated in Amendment 51. *See id.* at 2.  This constitutional prohibition, the SBEC concluded, left county clerks without "the authority to accept voter registration applications completed with electronic signatures" submitted by third-party services like those the Plaintiffs wish to use here.  *Id.*  As the SBEC explained, based on principles of statutory

4

construction, a "voter registration application completed and submitted, other than through an identified Registration Agency, cannot include the use of computerized signatures or marks." *See id.* at 5–8.

After SBEC passed the rule, the Arkansas Legislative Council's executive subcommittee approved it, and it took effect on an emergency basis on May 4, 2024. The rule expires on September 1, 2024. Plaintiffs challenge the emergency rule here, arguing that it violates the Materiality Provision of the Civil Rights Act of 1964. More than a month after they filed suit challenging the constitutionality of the "Signature or Mark" requirement, Plaintiffs filed the Motion, seeking an order enjoining Defendants from enforcing the emergency rule.

### III.    ARGUMENT

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 658 F.3d 701, 705 (8th Cir. 2011). To prevail, Plaintiffs must, under Eighth Circuit precedent, carry this burden on four fronts: (1) the threat of irreparable harm to Plaintiffs; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on Defendants; (3) the probability that Plaintiffs will succeed on the merits; and (4) that public interest favors injunctive relief. *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640

F.2d 109, 113 (8th Cir. 1981). Plaintiffs have failed to demonstrate that any of the *Dataphase* factors favor a preliminary injunction. Accordingly, the Motion should be denied.

**A.     Plaintiffs Have Failed to Carry Their Burden of Demonstrating a Likelihood of Success on the Merits.**

Success on the merits is "the most important" of the four [*Dataphase*] factors," and "requires a movant to demonstrate at least a fair chance of prevailing." *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 593 (8th Cir. 2022) (internal quotations omitted). Plaintiffs assert that one claim—the alleged violation of the Materiality Provision—is a likely source of success on the merits. However, Plaintiffs' claim fails on at least three independent grounds. *First*, as a threshold matter, Plaintiffs Get Loud Arkansas ("GLA") and Vote.org ("VDO") lack standing. *Second*, Plaintiffs are unable to establish that the "Signature or Mark" requirement is immaterial as a matter of federal law. And *third*, Plaintiffs cannot prevail because there is no private right of action under the Civil Rights Act.

**1.     Plaintiffs GLA and VDO Lack Standing.**

Plaintiffs GLA and VDO lack standing, as they have not alleged a cognizable injury capable of redress before this Court. Federal courts can only consider actual "Cases" and "Controversies." U.S. Const. art. III, § 2. Accordingly, a litigant must have standing "to invoke the authority of a federal court." *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008) (internal quotations omitted). An organization may establish standing in two ways: organizational standing and associational standing. Plaintiffs GLA and VDO can show neither.

**a.     GLA and VDO Cannot Establish Organizational Standing.**

When asserting organizational standing, courts "conduct the same inquiry as in the case of an individual." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). Specifically, the organization must establish "(1) that [it] suffered an 'injury-in-fact,' (2) a causal relationship

6

between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Pucket*, 526 F.3d at 1157.  The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotations omitted).  An organization can demonstrate injury in fact if it can show a "concrete and demonstrable injury to [its] activities which drains its resources and is more than simply a setback to its abstract social interests." *Nat'l Fed'n. of the Blind v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999) (citing *Coleman*, 455 U.S. at 379).  However, "[a]bsent specific facts establishing distinct and palpable injuries fairly traceable to the defendants' conduct the injury in fact requirement is not satisfied." *Id.* at 980–81 (internal citations omitted).

VDO alleges that it is injured by the "Signature or Mark" requirement, as it "*would like* to deploy its web platform *in future elections* in Arkansas.  The requirement, according to VDO, bars the use of VDO's e-signature function and frustrates its mission." Compl., ¶ 82 (emphasis added).  VDO further claims that it "*will be forced* to redirect limited financial and staff resources" from its other projects "towards less efficient and more resource-intensive ways of assisting voters to register in Arkansas." *Id.*, ¶ 83 (emphasis added).

VDO's alleged injury does not qualify as an injury in fact, as it is not "certainly impending." *See Clapper*, 568 U.S. at 409.  VDO has not yet deployed its web platform in Arkansas and has not alleged any diversion of resources to date. Compl., ¶ 82–83.  Such injury is thus merely conjectural and hypothetical.  VDO "cannot manufacture standing by choosing to make expenditures based on" an alleged harm that does not itself qualify as an injury in fact. *See Clapper*, 568 U.S. at 402.  Indeed, VDO does not allege that "Signature or Mark" requirement has impacted it in any "measurable way." *See Cross*, 184 F.3d at 981.  VDO's theory of standing

depends on speculation because it presumes that a voter in Arkansas will attempt to use a to-be-created web platform for the purpose of registering to vote at some unknown time in the future. This mere speculation is not enough to confer standing.

GLA likewise fails to meet the test for organizational standing. GLA asserts that it is an Arkansas nonprofit that seeks to "increase civic participation in Arkansas." Compl., ¶ 11. Specifically, GLA "works to register new voters, engage low propensity voters, and mobilize all eligible citizens to utilize the power of their vote to shape the future of Arkansas." *Id.* GLA alleges that the "Signature or Mark" requirement "caused immediate damage to GLA's voter registration efforts and will severely restrict how it conducts voter registration efforts moving forward." *Id.*, ¶ 73. GLA further alleges that, unable to submit applications bearing electronic signatures, it "has also been forced to divert its limited staff and financial resources towards less efficient means of pursuing its voter registration goals" by "retraining its staff . . . to attend public events to encourage people to register to vote using paper applications." *Id.*, ¶ 78–79; Mot., at 9.

However, GLA has not shown how engaging in alternative efforts to "register new voters, engage low propensity voters, and mobilize" eligible citizens to vote perceptibly impairs its mission to "improve civic participation in Arkansas." *See Id.*, ¶ 79; Mot., at 2. Responding to developments in state election law is part and parcel of GLA's stated mission. GLA cannot list its usual actions and assert that it has diverted resources from those same actions. Accordingly, GLA has not shown a distinct and palpable injury sufficient to confer standing, as it cannot demonstrate that its expenditure of resources occurred outside its normal operations. *See Cross*, 184 F.3d at 979; *see also Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) (holding that a diversion of resources when a party has not been harmed is a "self-inflicted budgetary choice that cannot qualify as an injury in fact").

Both VDO and GLA have failed to connect their alleged harms to any state action, and there is no actual or imminent injury for a favorable decision to redress. Thus, neither Plaintiff has introduced allegations sufficient to confer organizational standing.

### b. GLA and VDO Cannot Establish Associational Standing.

To establish associational standing, an organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

VDO cannot make use of associational standing, as it does not have members. *See Vote.Org v. Callanen*, 39 F.4th 297, 303, n.2 (5th Cir. 2022) ("Because it is a non-membership organization, Vote.org cannot contend that it has associational standing"). GLA has similarly failed to allege that it has any members; nor does the group claim that any of its members have been injured in any way from the "Signature or Mark" requirement. Any such speculation is plainly insufficient to demonstrate a concrete and particularized injury.

For these reasons, both VDO and GLA have failed to satisfy the settled Article III standing requirements.

### 2. The "Signature or Mark" Requirement Is "Material" and Does Not Violate Section 10101(a)(2)(B).

On the merits, Plaintiffs' constitutional challenge fails because the "Signature or Mark" requirement is "material" and plainly comports with what is permitted in the Arkansas Constitution.

The Materiality Provision provides,

9

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

As the Supreme Court has held, a state "indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Regulations enacted to protect the integrity of a state's election instills public confidence in the electoral process because it "encourages citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008).

Contrary to Plaintiffs' assertion, the Arkansas Constitution does not expressly permit individuals to electronically sign voter registration applications. *See* Mot., at 17. Amendment 51 delineates the requirements for voter registration and provides that "[n]o person shall vote or be permitted to vote in any election unless registered in a manner provided for by this amendment." Ark. Const. amend. 51, § 3; *see also Martin v. Kohls*, 2014 Ark. 427, at 17, 444 S.W.3d 844, 854 (Goodson, J., concurring) (noting that Amendment 51 provides a "comprehensive regulatory scheme governing the registration of voters"). The Amendment, per its express terms, requires an "identifying signature" on voter registration applications. Ark. Const. amend. 51, § 6(a)(1). The Amendment only authorizes electronic signatures for processes implemented by identified Registration Agencies. *Id.*, § 5(b)(2)–(4). But nowhere else in the Amendment is the use of electronic signatures authorized (such as via third-party services like VDO), which led to inconsistent processes utilized by county clerks across seventy-five different counties in Arkansas—all of which are voting in the same statewide election.

Plaintiffs contend that the only material requirements are contained in Article 3 of the Arkansas Constitution: that an individual is "(1) a U.S. citizen; (2) a resident of Arkansas; (3) at least 18 years of age; and (4) lawfully registered to vote in that election." Ark. Const. art. 3, § 1(a); Compl., ¶ 88.  But these are not the only requirements "material in determining whether such individual is qualified under State law to vote."  *See* SBEC, Rule Regarding Voter Registration, May 4, 2024, § 10101(a)(2)(B).  In other words, the Materiality Provision does not prohibit Arkansas from enacting rules important to safeguarding election integrity, as it does not displace state registration rules.  If it did, "virtually every rule governing how citizens vote would [be] suspect." *Callanen*, 39 F.4th at 306, n.6.

The SBEC implemented the "Signature or Mark" requirement as a means of standardizing the procedure across the State's seventy-five counties.  Requiring a non-electronic, or "wet," signature on all voter registration applications submitted in-person by the voter, mailed, or delivered by a third-party registration organization leads to statewide uniformity.  And a uniform process furthers Arkansas's interest in preventing fraud, verifying voter identity and eligibility, and promoting the integrity of the voter registration process.  It also does not frustrate the registration process—any Arkansas citizen who is at least eighteen years of age and otherwise qualified to vote may still register using the same process, using a non-electronic signature, that has been in place for decades since Amendment 51 passed in 1964.

Arkansas's position on the issue is consistent with the recent decision of the Fifth Circuit, which ruled that a similar "Signature or Mark" requirement on voter registration cards, also challenged by Plaintiff VDO, was permissible and did not violate the Materiality Provision. *Vote.Org v. Callanen*, 89 F.4th 459, 489 (5th Cir. 2023) (finding that "an original signature advances voter integrity" and "makes such a signature a material requirement").  Similarly, a

11

United States District Court in the Northern District of Florida granted a motion to dismiss on this very question.  *Vote.org v. Byrd*, No. 4:23-CV-111-AW-MAF, 2023 WL 7169095, at *7 (N.D. Fla. Oct. 30, 2023).  In that case, Plaintiff VDO again challenged a Florida signature requirement, putting forth the very same arguments it does in the present case.  *Id.* at *5.  The court rejected VDO's argument that a wet signature requirement "bears no relation to the statutory qualifications, the applicant's age, citizenship, and residence," and held that "the acceptance of electronic signatures in certain circumstances does not render the wet signature requirement immaterial," as "original signatures carry different weight."  *Id.*, at *6 (internal quotations omitted).

This Court should follow suit and find that "requiring an original signature meaningfully, even if quite imperfectly, corresponds to the substantial State interest." *See Callanen*, 89 F.4th at 489.  SBEC's contention that "an original signature advances voter integrity" and creates statewide uniformity "is legitimate, is far more than tenuous, and under the totality of circumstances, makes such a signature a material requirement." *Id.*; *see also Org. for Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790, 803 (W.D. Mo. 2020) (holding that election officials "may reject applications and ballots that do not clearly indicate the required information required by [state law] without offending 52 U.S.C. § 10101(a)(2)(B)."); *League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174, 2023 WL 6446015, at *17 (W.D. Ark. Sept. 29, 2023), *judgment entered*, No. 5:20-CV-05174, 2023 WL 6445795 (W.D. Ark. Sept. 29, 2023) (correctly noting that "the Materiality Provision does not establish a least-restrictive-alternative test for the material information required").  Indeed, only one district court has allowed this type of claim to proceed, and it did not enter an injunction; it simply allowed the claim to proceed past the pleading stage.  *See Vote.org v. Georgia State Election Bd.*, 661 F. Supp. 3d 1329, 1341 (N.D. Ga. 2023).

Thus, Plaintiffs cannot show a likelihood of success on the merits, as the "Signature or Mark" requirement is a material requirement of Arkansas's voter registration and election administration processes.

### 3. 52 U.S.C. § 10101 Does Not Create a Private Right of Action and Cannot Be Enforced by Private Parties in a 42 U.S.C. § 1983 Suit.

Plaintiffs also lack a private right of action here. The "central inquiry" in "determining whether a private remedy is implicit in a statute not expressly providing one" is "whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). The Supreme Court has called the approach of "recognizing implied causes of action" an "*ancient regime*." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons. *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (internal quotations omitted). Absent "rights-creating language," statutes may not be privately enforced. *Id.* at 277 (internal quotations omitted).

52 U.S.C. § 10101 does not explicitly create a private right of action. Instead, Congress created a cause of action for "the Attorney General." § 10101(c) ("the Attorney General may institute for the United States . . . a civil action or other proper proceeding for preventive relief"). Many courts have held that section 10101 (previously codified at 42 U.S.C. § 1971) does not create a private right of action. *See, e.g.*, *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000) ("Section 1971 is enforceable by the Attorney General, not by private citizens); *Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004) (Section "1971 does not provide for a private right of action by individuals"). *But see League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021) (permitting a plaintiff to bring a private cause of action via section 10101).

Nor may Plaintiffs rely on an implied private right of action. The language of the federal Materiality Provision focuses on the local official regulated, rather than individual voters. 52 U.S.C. § 10101(a)(2)(B) ("No person acting under color of law shall . . ."). This is not the "rights-creating language" required to maintain a private right of action. *See Sandoval*, 532 U.S. at 277, 289. And "Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999). As the Eighth Circuit held in *Does v. Gillespie*, a "statute that speaks to the government official . . . does not confer the sort of individual entitlement that is enforceable under § 1983." 867 F.3d 1034, 1041 (8th Cir. 2017) (internal quotations omitted). In other words, "the negative implication of Congress's provision for enforcement by the Attorney General is that the statute does not permit private rights of action." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (holding no private right of action exists to enforce Materiality Provision).

Defendants acknowledge that one judge in this district recognized the existence of a private right of action in *League of Women Voters of Arkansas*. Defendants, however, urge the Court to reach a different conclusion here. The Court should, as the Eight Circuit has recognized, "presume that Congress intended that the enforcement mechanism provided in [52 U.S.C. § 10101] be exclusive." *Alsbrook*, 184 F.3d at 1011. This is especially true in light of Eighth Circuit decisions issued in the years following *League of Women Voters of Arkansas*, where the court has noted it will not "fill in the gaps" where statutes lack a private right of action. *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204, 1209 (8th Cir. 2023). 52 U.S.C. § 10101 includes no private right of action, express or implied, and "nothing short of an unambiguously conferred right will support" one. *See Osher v. City of St. Louis, Missouri*, 903 F.3d 698, 702 (8th

14

Cir. 2018) (internal quotations omitted). With "an unambiguously conferred right" missing, Plaintiffs cannot use 52 U.S.C. § 10101 as a vehicle to obtain private relief.

### 4. A Preliminary Injunction Is Inappropriate Because Plaintiffs Will Not Suffer Irreparable Harm in the Absence of Injunctive Relief.

To succeed in demonstrating a threat of irreparable harm, "the movant must show that harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 597 (8th Cir. 2022) (internal quotations omitted). "The absence of irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Id.* Importantly, federal courts may not issue advisory opinions. *Carney v. Adams*, 592 U.S. 53, 58 (2020). "It has long been its considered practice not to decide abstract, hypothetical or contingent questions." *Vorbeck v. Schnicker*, 660 F.2d 1260, 1264 (8th Cir. 1981).

Here, Plaintiffs cannot show a threat of irreparable harm, as the temporary emergency rule adopted by SBEC, which is the subject of this lawsuit, is on the verge of being superseded by a rule recently passed by SBEC, effective on September 1, 2024. Any ruling on the emergency rule at this stage would amount to an impermissible advisory opinion. *See id.*; *see also Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 933 (8th Cir. 2005) (finding that because an injury was not "certainly impending," an "opinion [the court] would issue would be advisory, in contravention of Article III, and a waste of resources").

Further, Plaintiffs VDO and GLA will suffer no harm, and certainly no irreparable harm, as they are organizations that cannot vote and do not have standing. *See supra*, § 1. And VDO and GLA have offered no reasons for why they cannot direct their outreach programs to facilitating voter registration in a way that complies with state law; their assertions that they should be

15

permitted to utilize any technology they want in registering voters is not an injury capable of redress before this Court.

When boiled down, the two individual Plaintiffs' only claim of irreparable harm is that "the loss of the opportunity to register with an electronic signature and subsequently vote in the 2024 elections." Mot., at 26. But this alleged threat of irreparable injury is non-existent, as the individual Plaintiffs can simply submit new voter registration applications with handwritten signatures.

Because Defendants inflicted no irreparable injury on Plaintiffs or any Arkansas voter, injunctive relief at this stage offers nothing to Plaintiffs and would be tantamount to an advisory opinion.

## IV.     CONCLUSION

The Court should deny the Motion.

> Respectfully submitted,
>
> Byron Freeland (Ark. Bar No. 72039)
> Graham Talley (Ark. Bar No. 2015159)
> **MITCHELL, WILLIAMS, SELIG,**
> **GATES & WOODYARD, PLLC**
> 425 West Capitol Avenue, Suite 1800
> Little Rock, Arkansas 72201
> Phone: (501) 688-8800
> Fax: (501) 688-8807
> Email: bfreeland@mwlaw.com
>             gtalley@mwlaw.com