# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No: 24-2810

Get Loud Arkansas, et al.

Appellees

v.

John Thurston, in his official capacity as Commissioner of the Arkansas State Board of Election Commissioners, et al.

Appellants

Betsy Harrell, in her official capacity as Benton County Clerk, et al.

------------------------------

Center for Election Confidence, Inc., et al.

Amici on Behalf of Appellant(s)

_____

Appeal from U.S. District Court for the Western District of Arkansas - Fayetteville
(5:24-cv-05121-TLB)
_____

**AMENDED ORDER**

Before SMITH, GRUENDER, and KOBES, Circuit Judges.

     Appellants' motion for a stay pending appeal is granted.  The temporary administrative stay granted by this court on September 13, 2024, is converted to a stay pending appeal. The district court's preliminary injunction enjoining Appellants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from enforcing the Wet Signature Rule and from rejecting or refusing to accept any voter registration application on the ground that it was signed with a digital or electronic signature is hereby stayed pending disposition of this appeal.

SMITH, Circuit Judge, dissenting from the grant of the motion for stay pending appeal.

I would deny the motion for stay pending appeal. The Arkansas State Board of Election Commissioners (SBEC) bases its stay request almost entirely on *Purcell v. Gonzalez*, 549 U.S. 1 (2006). I conclude *Purcell* is inapplicable to the present case.

The *Purcell* principle — that federal courts should usually refrain from interfering with state election laws in the lead up to an election — is well established. *See Purcell v. Gonzalez*, 549 U.S. 1, 127 S. Ct. 5, 166 L. Ed. 2d 1 (2006) (per curiam). The Supreme Court has recently and repeatedly reaffirmed it. *See, e.g.*, *DNC*, ⸺ U.S. ⸺, 141 S. Ct. 28; *Andino v. Middleton*, No. 20A55, ⸺– U.S. ⸺, 141 S.Ct. 9, ⸺ L.Ed.2d ⸺ (U.S. Oct. 5, 2020); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, ⸺ U.S. ⸺, 140 S. Ct. 1205, 1207, 206 L. Ed. 2d 452 (2020) (per curiam). Election rules must be clear and judges should normally refrain from altering them close to an election. *Purcell* protects the status quo.

But the Constitution recognizes something else. Namely that the design of electoral procedures is, at bottom, a job for "the Legislature." U.S. Const. art. I, § 4, cl. 1; art. II, § 1, cl. 2; *see also Rucho v. Common Cause*, ⸺ U.S. ⸺, 139 S. Ct. 2484, 2495, 204 L. Ed. 2d 931 (2019); *cf. DNC*, ⸺ U.S. ⸺, 141 S. Ct. at 29–30 (Gorsuch, J., concurring in denial of application for stay) ("The Constitution provides that state legislatures — not federal judges, not state judges, not state governors, not other state officials — bear primary responsibility for setting election [and elector] rules.").

*Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020) (alteration in original).

Importantly, "[t]he *Purcell* principle is a presumption against disturbing the status quo. The question here is who sets the status quo? The Constitution's answer is generally the state legislature." *Id.* Here, it *was not* the Arkansas Legislature that imposed the wet signature requirement; it was the SBEC. As the district court explained:

Section 6 of Amendment 51 specifies certain requirements for mail voter registration applications—i.e., those submitted by individuals and third-party organizations—and certain requirements for applications submitted by Registration Agencies. Relevant here, both processes require the applicant to make a "signature or mark" on the application, affirming under penalty of perjury that the applicant meets the voter registration requirements. *Id.* amend. 51, §§ 6(a)(3)(F), (b)(1)(G), (b)(2).

The Arkansas Constitution does not define "signature or mark." And though Amendment 51 explicitly discusses the use of a "computer process" by Registration Agencies in registering new voters, the text makes no such mention regarding mail voter registration applications. *See id.* amend. 51 § 5(b)(2)-(4). However, section 6 explicitly excludes "any requirement for notarization or other formal identification" or "authorization" for registration applications. *Id.* amend. 51, §§ 6(a)(5), (b)(2).

Under Amendment 51, county clerks serve as the permanent registrars and are tasked with processing registration applications. *See id.* amend. 51, §§ 2, 9(c). The Amendment instructs, "The permanent registrar shall register qualified applicants when a legible and complete voter registration application is received and acknowledged by the permanent registrar." *Id.* amend. 51, § 9(c)(1), (3).

Historically, county clerks in Arkansas have been "advised to accept voter registration applications with any type of signature or mark," including where "a person signs their name in an illegible fashion—or even just makes a mark." (Doc. 46-6, ¶ 16). While the signature or mark may be used for later comparisons against a voter's absentee ballot, *id.* at ¶ 19,[2] at the registration stage the signature or mark's "purpose . . . is to affirm under penalty of perjury that the information in the application is true and correct to the best of the applicant's knowledge." *Id.* at ¶ 16.

. . .

On February 28, 2024—two days after the *Arkansas Times* reported on the success of GLA's online tool—Secretary Thurston sent notice to all county clerks

in Arkansas, "strongly recommend[ing] that counties do not accept voter registration applications executed by electronic signature" and remarking on the need to "maintain [ ] strong election integrity." (Doc. 46-7, p. 17).

Soon after, on March 12, Secretary Thurston contacted Arkansas Attorney General Tim Griffin's office requesting a "formal opinion" on the legality of digital signatures on voter registration applications that are "created by a third-party non-governmental agency." *Id.* at p. 19; *see* Ark. Code Ann. § 7-4-101(g) ("The Attorney General shall provide legal assistance to the State Board of Election Commissioners in answering questions regarding election laws."). In April, Attorney General Griffin issued his formal opinion that "an electronic signature or mark is generally valid under Arkansas law," provided the "registration form [is] created and distributed by the Secretary of State." (Doc. 46-7, p. 21). In reaching this conclusion, Attorney General Griffin stated,

> given the historical acceptance of signatures produced through a variety of means, the widespread acceptance of electronic signatures, and the fact that Amendment 51 does not contain any restrictions on how a "signature or mark" may be made, I believe that an electronic signature satisfies Amendment 51's "signature or mark" requirement.

*Id.* at p. 23.

*Disregarding the Attorney General's opinion, the SBEC swiftly adopted an emergency rule that prohibited county clerks from accepting voter registration applications with digital signatures from individuals and third-party organizations.* *Id.* at pp. 61-63, 66, 73; see Ark. Const. amend. 51, § 5(e) (authorizing and directing the SBEC to make rules that "are necessary to secure uniform and efficient procedures in the administration" of Amendment 51); Ark. Code Ann. § 7-4-101(f)(5) (similar). The emergency rule went into effect on May 4, a comment period was held mid-summer, and the Legislative Council approved the rule—

thereby making it permanent—on August 23. *See* Doc. 63, ¶ 4 (Supplement to Complaint); Ark. Code Ann. § 10-3-309(c) (providing the process for the Legislative Council's approval of agency rules).

*Get Loud Arkansas v. Thurston*, No. 5:24-CV-5121, 2024 WL 4142754, at **3, 5 (W.D. Ark. Sept. 9, 2024) (emphasis added).

"In our case, the [Arkansas] Legislature set the status quo, the [SBEC] upset it, and it is our duty, consistent with *Purcell*, to at least preserve the possibility of restoring it." *Carson*, 978 F.3d at 1062. This is precisely what the district court did when it granted the motion for a preliminary injunction. As a result, I would deny the motion for stay pending appeal to preserve the status quo.

October 09, 2024

Order Entered at the Direction of the Court:
Acting Clerk, U.S. Court of Appeals, Eighth Circuit.

_____
          /s/ Maureen W. Gornik